1  PATRICK C. MCGARRIGLE, ESQ., SBN 149008
   MICHAEL J. KENNEY, ESQ., SBN 192775
2  PHILIP A. ZAMPIELLO, ESQ., SBN 198723
   McGARRIGLE, KENNEY & ZAMPIELLO, APC
3  9600 Topanga Canyon Boulevard, Suite 200
   Chatsworth, California   91311
4  PH: (818) 998-3300    FAX: (818) 998-3344

5  Attorneys for Creditor/Adversary Plaintiff
   Kenneth Barton
6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                     LOS ANGELES DIVISION

11

12  IN RE:                          )  Case No. 2:13-bk-19713-VZ
                                    )
13      ZAFAR DAVID KHAN,           )
                                    )  **NOTICE OF MOTION AND**
14          Debtor,                 )  **MOTION OF CREDITOR -**
                                    )  **ADVERSARY PLAINTIFF**
15                                  )  **KENNETH BARTON TO**
                                    )  **CONVERT DEBTOR ZAFAR**
16                                  )  **KHAN'S CHAPTER 13**
                                    )  **BANKRUPTCY CASE TO**
17                                  )  **CHAPTER 7; MEMORANDUM OF**
                                    )  **POINTS AND AUTHORITIES;**
18                                  )  **DECLARATION OF PATRICK C.**
                                    )  **McGARRIGLE AND EXHIBITS**
19                                  )  **THERETO.**
                                    )
20                                  )  **Date:    October 7, 2013**
                                    )  **[Self-Calendared]**
21                                  )  **Time:   11:00 a.m.**
                                    )  **Dept.:   Courtroom 1368**
22                                  )  **          Edward Roybal Federal**
                                    )  **          Building, 255 East Temple**
23                                  )  **          Street, Los Angeles, CA**
                                    )
24                                  )  *[Compendium of Exhibits,*
                                    )  *Volumes I - IV filed concurrently*
25                                  )  *herewith]*
                                    )
26                                  )
                                    )
27  _____     )

28

                              1
     **MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    **TO: THE HONORABLE JUDGE VINCENT P. ZURZOLO, UNITED**

2    **STATES BANKRUPTCY JUDGE; DEBTOR ZAFAR KHAN AND HIS COUNSEL**

3    **OF RECORD; THE CHAPTER 13 TRUSTEE AND ALL INTERESTED PARTIES:**

4    PLEASE TAKE NOTICE THAT, on October 7, 2013, in Courtroom 1368, at 11:00

5    a.m., or as soon thereafter as the matter may be heard, Creditor/Adversary Plaintiff

6    Kenneth Barton ("**Creditor,**" "**Barton**" or "**Movant**"), by and through his attorneys of

7    record, hereby moves for an order converting the Chapter 13 Bankruptcy Case of Debtor

8    Zafar Khan ("**Debtor**" or "**Khan**") to a Chapter 7 Case under 11 U.S.C. Section 1307(c).

9    If you wish to oppose or respond to this motion, you must file a written response

10    with the Clerk of the United States Bankruptcy Court at Edward R. Roybal Building and

11    Courthouse, 255 East Temple Street, Suite 940 Los Angeles, California 90012, serve a

12    copy of it on the Movant, United States Trustee, and all other parties requesting notice, at

13    the address set forth above and upon the Chapter 13 Trustee (see attached service list) no

14    less than 14 days prior to the above hearing date.   If you fail to file a response to this

15    motion within such time period, the Court may treat such failure as a waiver of your right to

16    oppose the motion and may grant the requested relief.

17    This Motion is based on the following:

18    1.    Debtor Zafar Khan's unsecured, liquidated and non-contingent pre-petition

19    claims exceeded and exceed the eligibility maximum for a Chapter 13 case (11 U.S.C.

20    §109(e)), and, as such, cause under 11 U.S.C. §1307(c) exists to convert the case to

21    Chapter 7 as conversion is in the best interests of the creditors and the estate.   Based upon

22    the Los Angeles Superior Court's statements of decision and Judgment in the

23    "**Pre-Petition Superior Court Action**"[1] (which claims and Khan's liability were

24    established pre-petition, with that Court poised to complete the 2nd phase of its damages

25    determination after the cause was submitted for decision just prior to the petition filing

26    date), Debtor's unsecured obligations to Creditor Barton exceed $4,070,081.91 including

27    compensatory and punitive damages for fraud, intentional breach of fiduciary duty and

28    _____
1 *Barton v. RPost International Limited, Zafar Khan, Terrance Tomkow, et al.*, LASC
Case No. YC061581.

1

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  conversion, etc.  In addition, the pre-petition claims of unscheduled creditors – Rpost

2  International Limited ("RIL") and shareholders of RIL and its affiliates – also render Khan

3  ineligible under Chapter 13.  As a result, Debtor does not qualify under Chapter 13 as his

4  pre-petition unsecured debt exceeds the eligibility maximum.  Under the totality of the

5  circumstances in this case (as described more fully below), the best interests of the

6  creditors and the estate warrant that the instant case be converted to Chapter 7.

7       2.    While Chapter 13's eligibility bar coupled with the extent of Debtor's actual

8  unsecured debt are sufficient to preclude Debtor's continued maintenance of a Chapter 13

9  case and to justify conversion of the case to Chapter 7 for the reasons set forth below, other

10  "indicia" of cause under 11 U.S.C. §1307(c) also exist to warrant conversion to Chapter 7.

11  Under the totality of the circumstances, any one of the facts below warrant conversion to

12  Chapter 7: (**a**) Debtor concealed and misrepresented his assets in his Schedules, (**b**) Debtor

13  has obstructed and abused the Bankruptcy process as part of a larger scheme to defraud the

14  United States Bankruptcy Court, the United States District Court (in at least the Eastern

15  District of Texas), the Los Angeles Superior Court, Creditor Barton and the myriad other

16  creditors of Debtor (both those to whom notice of this bankruptcy proceeding was given

17  and those who were not); (**c**) Debtor filed the Petition to interfere with the Los Angeles

18  Superior Court's entry of Judgment, and did so at a time when Debtor was admittedly

19  solvent (at least $310,000 in net worth, and without accounting for Debtor's shareholder

20  interests in the on-going corporate businesses (RPost International Limited ("**RIL**"),

21  RMail Limited ("**RMail**") and RPost Communications, Ltd. ("**RComm**") [which he and

22  co-debtor Terrance Tomkow control]), (**d**) Debtor's petition was filed in bad faith[2]; and

23  (**e**) Debtor's plan is non-confirmable.

24       3.    Because the Chapter 13 proceeding presently continues to allow Khan to

25  control the assets including those which he concealed and defiantly refuses to disclose to

26  the Trustee and creditors, Barton respectfully requests that this case be converted to

27  _____

28  [2] A determination of "bad faith" is not a requirement for conversion, only that "cause" for
conversion be demonstrated under Section 1307(c).  *In Re Henson*, 289 B.R. 741 (N.D.
Calif. 2003).

2

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   Chapter 7 forthwith as same is in the best interests of the creditors and the estate.   As the

2   Court stated in *In Re Henson*, 289 B.R. 741 (N.D. Calif. 2003):

> "In this case, the interests at stake would be better served
> through conversion  of the case for administration by a
> Chapter 7 Trustee than through dismissal of the case.
> Conversion will place the estate in the hands of an independent
> Court-appointed Trustee, preserve such assets as exist and
> allow for potential recovery of additional ones through use
> of avoiding powers, maintain the Code's priorities among
> creditors in an orderly distribution, and permit   Creditor to
> seek exception of its claim from discharge to pursue Debtor
> outside of bankruptcy if it wishes to do so. On balance, that
> result is preferable to dismissal, which would leave all
> creditors and claimants to fend for themselves in State Court,
> with an absent Debtor and none of the avoiding powers
> provided by the Code."

13   Creditor Barton and all other creditors of Debtor will be best served by an independent

14   trustee's active involvement to secure, protect and preserve, and liquidate the myriad assets

15   for recovery by the creditors through the prompt seizure thereof and taking control of the

16   entities referenced above to ensure that the Debtor's creditors are paid and Debtor and his

17   representatives' manipulation of the legal system and subject businesses is substantially

18   curtailed, if not prevented and unwound.

19      This Motion is and will be based upon this Notice, the attached Memorandum of

20   Points and Authorities in support of the Motion, the Declaration of Patrick C. McGarrigle

21   (and Requests for Judicial Notice therein) and the Compendium of Evidence in Support of

22   the Motion (Volumes 1 and 2) filed concurrently therewith, the complete files and records

23   in this action, the oral argument of counsel and such other and further evidence as the Court

24   might deem just and proper.

25   Dated:   September 13, 2013      McGARRIGLE KENNEY & ZAMPIELLO, APC

26

27                      By:_____

28                       Patrick C. McGarrigle, Esq.
                      Attorneys for Creditor/Adv. Plaintiff Ken Barton

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

# TABLE OF CONTENTS

**Page(s)**

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................1

I.  **CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS
    SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR
    CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND
    LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND
    CORPORATE ASSETS IS IN THE BEST INTERESTS OF THE
    CREDITORS/ESTATE** ...................................................................1

  A.  **UNDERLYING FACTS** ....................................................2

      1.  The State Court Fraud Decision Against Khan, et al. ..................2

      2.  Khan's Asset Accumulation &Concealment ...............................4

  B.  **AS KHAN WAS/IS INELIGIBLE TO FILE & MAINTAIN THIS
      CHAPTER 13 CASE AND "CAUSE" UNDER SECTION 1307(C) IS
      PRESENT, CONVERSION TO CHAPTER 7 IS WARRANTED** .........9

      1.  The Law Re: Determining Chapter 13 Eligibility.......................9

      2.  The Law Re: Other Indicia Of "Cause" For Conversion/Dismissal
          Under Section 1307(C)..............................................................10

      3.  Khan Is Ineligible For Chapter 13 Case; As Such, Cause For
          Conversion Is Present ..............................................................14

      4.  Additional, Overwhelming Good Cause Exists Which Compels
          The Conversion Of Khan's Bankruptcy To Chapter 7 ...............17

          a)  Khan's Schedules Contain Misrepresentations and
              Conceal Material Assets ....................................................17

          b)  Despite The Trustee's Written And Oral Requests, Khan
              Has Defiantly Refused To Produce Records And Information
              Of His Assets Including The Corporate Assets That He
              Controls, Thereby Misusing And Abusing The
              Bankruptcy System..........................................................21

          c)  Khan Had At Least $315,000 In Net Worth As Of The
              Petition Date (Independent Of The Value Of His Shares
              In The Rpost Companies And The Corporate Assets He
              Controls); The Petition Was Filed Solely To Interfere
              With The Pre-Petition Superior Court Action.................22

TABLE OF CONTENTS

         d)      Khan's "Plan" Is Not Confirmable And Is Inequitable
               Given The Substantial Claims Against Him/The Estate ..23

     5.    Conversion To Chapter 7 Is Clearly In The Best
         Interests Of Khan's Creditors And The Estate............................24

II.     CONCLUSION....................................................................................................25

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

## CASES

## FEDERAL CASES

Page(s)

*Eisen v. Curry (In re Eisen),*
    14 F.3d 469(9th Cir. 1994)..................................................................13

*Ekeke v. United States,*
(S.D. Il. 1991) 133 B.R. 450, 452 ...........................................................10

*In re Alt,*
    305 F3d 413(6th Cir. 2002)..................................................................13

*In re Cavanagh,* 250
    B.R. 107, 114 (9th Cir. BAP 2000)........................................................14

*In Re Crittenden,*
    2012 WL 1492321(D. Montana 2012).....................................................14

*In Re Docco,*
    2010 WL 703113 (N.D. Calif. 2010) .....................................................14

*In re Ferri,*
    2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr. D.N.M. 2010)..10

*In Re Fostvedt,*
    823 F.2d 305 (9th Cir. 1987) ...........................................................9, 10

*In re Goeb,*
    675 F.2d 1386 (9th Cir.1982)...........................................................13, 24

*In Re Guastella,*
    341 B.R. 908 (9th Cir. BAP 2006).....................................................10, 18

*In re Henson,*
    289 B.R. 741 (2003).......................................................................18, 24

*In re Jensen,*
    425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010).........................................11

*In re Jercich,*
    238 F.3d 1202 (9th Cir.2001).............................................................11

*In Re Keenan,*
    201 B.R. 263 (USBC SD Calif. 1996) ................................................9, 10

*In re Leavitt,*
    171 F.3d 1219 (9th Cir. 1999)........................................................12, 13, 14

*In Re Lindsey,*
    183 B.R. 624 (D. Idaho 1995)..............................................................14

TABLE OF AUTHORITIES

1  *In re Nash,*
        765 F.2d 1410, 1415 (9th Cir. 1985)................................................................13
2
3  *In re Nelson,*
        343 B.R. 671(9th Cir. BAP 2006)..............................................................9, 10
4
5  *In re Su,*
        290 F.3d 1140 (9th Cir.2002)........................................................................11
6  *In re Sobczak,*
        369 B.R. 512, 518 (9th Cir. BAP 2007) .....................................................11
7
8  *In Re Wenberg,*
        902 F.2d 768(9th Cir. 1990).........................................................................10
9  *Neary v. Padilla (In re Padilla),*
        222 F.3d 1184, 1192-93 (9th Cir. 2000) ....................................................13
10
11 *Scovis v. Henrichsen (In re Scovis),*
        249 F.3d 975(9th Cir. 2001).........................................................................10

12 **CALIFORNIA CASES**

13 *Industrial Indemnity Co. v. Golden State Co.*
        (1953) 117 Cal.App.2d 519...........................................................................6
14
15 *In re Marriage of Connolly*
        (1979) 23, Cal.3d 590............................................................................8, 18
16

17 **FEDERAL STATUTES**

18 11 U.S.C. § 101(12).......................................................................................9
19
   11 U.S.C. §109(e)..............................................................................9, 10, 11, 12
20
21 11 U.S.C. § 1112(b) ..................................................................................10, 11
22 11 U.S.C. § 1307(c)......................................................1, 2, 9, 10, 11, 12, 13, 17, 24
23
24 **SECONDARY SOURCES**

25 *8 Collier On Bankruptcy,*
        ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005) .............9
26
27 *Norton Bankruptcy Law and Practice,*
        3rd Ed. § 148:1 (2012) ...............................................................................11
28

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS
SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR
CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND
LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND CORPORATE
ASSETS IS IN THE BEST INTERESTS OF THE CREDITORS/ESTATE.**

By this Motion, Barton move the Court for an order converting the instant Chapter 13 case to Chapter 7 (conversion, rather than dismissal, being in the best interests of Khan's creditors and the estate) because **(a)** the Debtor is ineligible for Chapter 13, as Debtor's pre-petition debts exceed the Chapter 13 limitation, and **(b)** as separate but additional cause for conversion, Debtor has misrepresented and concealed assets on his schedules (original and amended), has misused and defiantly refused to cooperate with the Bankruptcy process (including the Trustee's requests for specific asset documentation and information), filed the petition solely to interfere with the Superior Court entering its decision on the valuation of the common shares (held by Khan, Barton and Tomkow in RIL) (as the valuation/damages issue had been submitted to the Court pre-petition and required the Court to simply choose the value per share and multiply same by the number of Barton's Shares in RIL fraudulent stolen by Khan, et al.), and has otherwise prosecuted this Bankruptcy in bad faith having secreted away assets in the preference period and refusing to disclose same.   Khan's practice of playing fast and loose with every court he is in front of – submitting forged corporate resolutions and destroying corporate records in the State Court Action, concealing the State Court fraud decision and this bankruptcy from the United States District Court in Texas (presiding over multiple consolidated patent infringement cases (IP)) and now with this Court (by submitting misleading schedules and concealing assets) - must be stopped and conversion of this case is the first step in that direction.

Under the totality of the circumstances, Chapter 7 conversion is the appropriate measure to ensure that the creditors of Debtor are paid and that the estate, managed by a Trustee concerned about the recovery of assets for the estate and creditors (and not by the

1

1  Debtor whose self-interest and manipulation is the stuff of legends), realizes a substantial

2  (but otherwise never to be shared and distributed) benefit.   Debtor made the election to

3  bring these matters before the Bankruptcy Court and, as a result, he should not be rewarded

4  with a dismissal, but instead, the conversion of the case to Chapter 7 and an orderly,

5  unbiased control over and disposition of the assets should occur for the benefit of the

6  creditors and the estate without delay.

7  **A.   Underlying Facts.**

8  **1.   The State Court Fraud Decision Against Khan, et al.**

9  Barton was a co-founder of RIL, a technology-software firm whose patents and

10  products included registered email and electronic transaction verification functionality.

11  During the course of litigation between Barton and RIL concerning RIL's failure to pay

12  some $450,000+ in compensation and expense reimbursements, Barton learned in a

13  deposition of Khan in the summer 2009 that RIL/Khan/Tomkow had secretly taken

14  Barton's 6,016,500 shares in RIL and returned them to RIL's treasury (purporting to divest

15  Barton of his near 20% equity position in the company).   Shortly thereafter, Barton

16  commenced the Pre-Petition State Court Action in January 2010 for fraud, intentional

17  breach of fiduciary duty, conversion, violations of Business & Professions Code Section

18  17200, etc.   The liability and damages phase of the trial proceeded in March/April 2012.

19  In August 2012, the Superior Court adjudged Khan, Tomkow and RIL to have committed

20  fraud, etc. including, without limitation, engaging in corporate records forgery, corporate

21  records destruction and other conduct sufficiently egregious to also warrant the imposition

22  of punitive damages against Khan and Tomkow.   Ex. 10.   The Superior Court had already

23  received extensive share and enterprise valuation evidence regarding RIL (Ex. 9);

24  however, the Superior Court initially decided (in August 2012) to award Barton the return

25  of his shares as an alternative remedy (plus $100,000 in emotional distress damages and

26  punitive damages, among other relief).   The punitive damages phase, which had been

27  bifurcated, proceeded to trial in November 2012.   At the conclusion of that phase, the

28  Superior Court, having heard sufficient evidence of Khan/Tomkow's gutting of RIL's

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  assets – through transfers of IP and cash from RIL to RMail and RComm (both then

2  newly-formed Bermuda entities which Khan/Tomkow controlled), reversed his decision

3  regarding the return of the shares and decided to proceed with additional share/enterprise

4  valuation evidence and hearings so as to award Barton the value thereof.   Declaration of

5  Patrick C. McGarrigle ("**McGarrigle Decl.**"), Para. 15; Compare Ex. 10 & Ex. 15.    The

6  Court appointed an independent expert (proposed by Khan/Tomkow/RIL) who supplied a

7  report and gave testimony regarding the valuation of the RIL shares and, inherent therein,

8  the enterprise value of RIL as of the June 2009 conversion date.   Exs. 14 & 25.   As the

9  Superior Court stated on April 4, 2013, its remaining task was to assign the value to the

10  common shares of RIL, multiply same by the number of Barton shares (to award share

11  valuation damages) and multiply same by the number of Khan and Tomkow common

12  shares in RIL to assist in the Court's punitive damages determination.   Ex. 25, p.

13  99:5-100:14.   Khan agreed that the entire matter was deemed submitted as of April 12,

14  2013 (two days before the Petition was filed).   Ex. 25, p. 102:6-7; 104:16-105:13.

15          However, on the eve of the Superior Court issuing its Revised Statement of

16  Decision awarding further damages (based on the extensive share valuation evidence the

17  Court had received) and punitive damages against Debtor, among others, Khan filed a

18  Sunday night Chapter 13 petition on April 14, 2013.   Exs. 1 & 2.   The Superior Court

19  had, all pre-petition, conducted three trial phases: liability and damages in March/April

20  2012, punitive damages in November 2012 and additional damages/valuation hearings in

21  February/early April 2013.   The Petition filing simply delayed the Superior Court entering

22  its further damages and punitive damages award based on the pre-petition conduct of

23  Khan, et al.; the Court confirmed it was "prepared to rule."   Ex. 27.   On or about May 3,

24  2013, this Court issued an order lifting the automatic stay concerning the Pre-Petition

25  Superior Court Action so that the Superior Court could issue its ruling and Judgment, etc.

26  On June 18, 2013, the Superior Court issued its Ruling on Punitive Damages and Revisions

27  to Statement of Decision ("**RSOD**") finding that the common shares of RIL (Barton, Khan

28  and Tomkow all held common RIL shares) were worth $.64 per share and, multiplying said

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1 sum by Barton's 6,016,500 common shares, Khan, Tomkow and RIL were liable in the

2 further sum of $3.9M for their fraud, etc. in the theft of those shares.   Ex. 15, p. 3.   On

3 August 30, 2013, the Superior Court entered its Judgment against Khan, Tomkow & RIL

4 for $3.8M, plus punitive damages against Khan and Tomkow, etc.   Ex. 17.

5         No sooner had the Superior Court entered its Judgment but Khan and Tomkow have

6 (underscoring why Chapter 7 conversion is necessary) RIL attempting, *after-the-fact*, to

7 conduct three years of RIL shareholder meetings (meetings for the years when

8 Khan/Tomkow had orchestrated the asset transfers without shareholder knowledge or

9 approval) (Ex. 24[B]).   Yet, in sharp contrast, RIL/Khan/Tomkow's attorney falsely

10 represented to the Superior Court that same day (on August 30, 2013) that RPost had

11 complied with all "corporate formalities."   Ex. 24[A], p. 29:21-23.

### 2.   Khan's Asset Accumulation & Concealment.

13         Debtor Khan is a shareholder, officer and director of RPost International Limited

14 ("**RIL**"), RMail Limited ("**RMail**"), RPost Communications, Ltd. ("**RComm**") (the "**RIL**

15 **Parties**").   Ex. 26, p. 21:6-13; 31:24-32:2.   RIL, formed in approximately 2000, was

16 founded by Barton, another debtor (Terrance Tomkow, Bankruptcy Case No.:

17 2:-13-bk-19712-WB), and Debtor Khan.   Barton owned 6,016,500 common shares in

18 RIL; the Superior Court determined that his shares were converted by Khan and Tomkow

19 (and RIL) in June 2009 (Exs. 10 & 15) (though, Khan/Tomkow/RIL asserted that Barton's

20 Shares had allegedly been unwound earlier – though they admittedly destroyed the

21 corporation's shareholder registries which would evidence such facts and forged corporate

22 records to cover up their theft).

23         During the period of mid-2009 through October 2010, RIL raised at least $6M from

24 investors, leaving $4M net capital (*after* deducting $2M in claimed accrued expenses) for

25 approximately the same period.   Ex. 12, p. 165:26-169:24.   <u>**Said funds have never been**</u>

26 <u>**accounted for by RIL/Khan/Tomkow and refuse to do so in these proceedings**</u>.   After

27 the purported RIL asset transfer to RComm in March 2011, RComm (with the same

28 business, assets, shareholders, officers/directors, officers, website, business plan and

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1    contracts as RIL) similarly raised at least another $5M+ from March 2011 thru July 2012

2    (Ex. 26, p. 17:3-10); **Yet, RComm/Khan/Tomkow have never accounted for that**

3    **capital and refuse to do so in the proceedings.**    Similarly, as discussed below,

4    Khan/Tomkow have utilized their insider company, RMail, to seize for themselves IP

5    rights and RIL's corporate opportunities that RIL funded and were within RIL's

6    business-sphere and then sued SWIFT, Amazon/Paypal and others and then settle and

7    retain for themselves (and in secret) the proceeds from those suits and without disclosure to

8    the RIL/RComm shareholders or, thereafter, the Trustee.   Ex. 12, p. 101:19-102:20;

9    103:20-104:13; Ex. 26, p. 25:22-27:15; 28:16-23.   IP settlements typically involve cash

10    payments and royalty/licensing agreements – yet, Khan/Tomkow defiantly refused to

11    disclose the RMail settlements at all or the amount and location of the settlement proceeds

12    and terms (and bank statements) to the Trustee while concurrently and incongruously

13    claiming their shares in RMail are worthless.   Ex. 5; Ex. 26, p. 14:16-23; 16: 2-5, 9-10,

14    15-25; 21:14-25.   The corporate share assets of Khan/Tomkow (which corporate finances

15    Khan brazenly conceals so as to "support" his false representation that his shares in the

16    RPost entities are "$0") more than amply demonstrate that conversion is in the best

17    interests of the creditors and estate.

18        Yet, the success of RIL business enterprise was not something that Khan/Tomkow

19    ever wanted Barton to be a part of (as if the forgery of corporate resolutions and corporate

20    record destruction were not evidence enough of their intent to freeze Barton out of any

21    realization of the value of his equity), even if he prevailed, as he did, in the litigation.

22    Knowing that they were engaging in their fraud and that Barton would pursue and

23    ultimately did pursue them for their fraud and breaches of fiduciary duty, etc. Khan and

24    Tomkow proceeded with a series of acts (in addition to concealing and failing to account

25    for the stunning equity accumulated as noted above):

26        (**a**) They formed RMail and secretly (with no disclosure to and approval by

27    RIL's shareholders) syphoned off nearly a $1M of RIL cash in the summer of 2009/2010 to

28    put valuable IP in the control of Khan/Tomkow's insider company (RMail) (McGarrigle

5

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

Decl., Para. 30 [See, Ex. 11, p. 27:5-15; 28:19-29:25; 30:15-23]);

(**b**) They concealed the taking of the corporate IP opportunity and diversion of corporate assets from RIL to their asset-less Bermuda company RMail[3] [*Id.*];

(**c**) Compounding their duplicity and plan for self-aggrandizement (and again with no disclosure to and approval by RIL's shareholders), they carved out for RMail's use only (Ex. 29, p.2) a valuable "field of use" within the IP (IP which was purchased with syphoned off RIL funds) that verifies electronic banking/sales transactions and purported to exclude this valuable "field of use" from the artificial construct of "license-back" of the IP to RIL (whose cash paid for the entirety of the IP in the first place); and

(**d**) After suing Amazon and PayPal for damages based on the alleged infringement of the "carved-out" patent, caused RMail to settle with Amazon/PayPal in March 2013 (some 30 days before the Petition was filed) (Exs. 21 & 22), but have refused to disclose and continue to conceal the settlement amounts and settlement documents (the Petition and "Amended" schedules disclose nothing regarding these IP litigations and settlement) while continuing to speciously claim their interests in RMail are worthless. Ex. 26, p. 14: 16-23; 16:2-5, 9-10, 15-25; 21: 14-25.   Khan also caused RIL to settle with Zix Corp. days before the Petition was filed (Exs. 18-20), but has refused to disclose and continues to conceal (again, the Petition and "Amended" schedules disclose nothing concerning this IP litigation and settlement) the settlement sums received and the settlement documents, all to frustrate and materially interfere with the Trustee/Creditor's

---

3 *Industrial Indemnity Co. v. Golden State Co.* (1953) 117 Cal.App.2d 519, 533 ("corporate officer or director may not seize for himself to the detriment of his company business opportunities in the company's line of activities which the company has an interest in or a prior right to obtain and that if he seizes them in violation of his fiduciary duty the corporation may claim for itself all benefits so obtained by him.). Here, RIL signed the NDA and was listed as the purchaser on the patent acquisition contracts until the last minute when Khan/Tomkow swapped in their new and admittedly asset-less entity (Ex. 12, p. 104:14-20), RMail, to be the buyer (but having RIL guaranty the obligation it was already poised to buy for itself).   Then, after the secret swap of entities, Khan/RMail secretly peeled-off of a valuable "field of use" within that very patent for itself (Ex. 29, p. 2) to the exclusion of RIL's shareholders/creditors (and then collecting undisclosed settlements with Amazon and PayPal [Ex. 21-22]).

6

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    rights and interests.    Ex. 26, p. 37:15-38:4.

2          The 2nd act in the Khan/Tomkow asset concealment and transfer charade occurred in

3    early 2011 and continues to this day.    After taking nearly $1M in cash out of RIL in

4    2009/2010 and raising more than $6M (in the name of RIL) between July 2009 and

5    October 2010, Khan and Tomkow augmented their asset transfer scheme.    In early 2011,

6    Khan and Tomkow engineered the transfer of 99% of RIL's assets to another new Bermuda

7    company, RComm, ostensibly to assist garnering new investors because, by using a new

8    company name and re-stating the share composition, new investors would not be deterred

9    from investing by the number of financing rounds RIL had undertaken in the prior 10

10   years.    RIL became RComm with a new name, but the same initial shareholders (save

11   certain common shareholders who apparently were not rolled into RComm), same officers,

12   same directors, same patents, same contracts, same website, same advisors, same counsel,

13   same offices, etc.    Even the equity raises were nearly identical:    In the 20 months before

14   the RIL to RComm transfer, RIL raised $6M in new equity at preferred share prices

15   ranging from $3.85 to $4.75 per share; In the 16 months after the RIL to RComm asset

16   transfer, RComm raised at least $5M in new equity (from late March 2011 through late

17   July 2012) at preferred share prices ranging from $5.00 to $5.75 per share.    Ex. 11, p.

18   76:24-78:20.

19         Yet, Debtor Khan incredibly asserts – while concealing the financial records of the

20   entities and failing to account for millions in investor capital – that his common and

21   preferred shares in these companies are worth "$0" or are "speculative" (Ex. 2, p. 7).    This

22   patently untenable plea (orchestrated through the artificial construction of asset transfers

23   between companies which Khan/Tomkow control overall) cries out for conversion and

24   Trustee seizure and liquidation.    For example,    (a) RComm investors are paying at or

25   above $5.75 per share for a typical interest payment preference (and with the same

26   purported re-sale restrictions as on Khan's preferred shares) (Ex. 12, p.178:5-15), but Khan

27   claims *his identical preferred shares* (183,000 of them) are worth $0; (b) the RIL

28   enterprise and shares had been valued by two different experts (Exs. 9 & 14) establishing

1  the common share values at $2.43 per common share with a near $100M enterprise

2  valuation or $.64 per common share at a $33M enterprise value[4], but neither of these

3  experts said the RIL shares were worth $0, nor did the Superior Court; and (c) RMail

4  settled with Amazon/Paypal in March 2013 and RIL settled with Zix Corporation in April

5  2013 (Exs. 18-22), but Khan has defiantly refused to disclose the amounts paid in the

6  preferential settlements, where the funds were deposited and/or disbursed and will not

7  provide the settlement documents, all to interfere with the bankruptcy process and the

8  Trustee/Creditors' ability to assess the availability of assets to satisfy the debts.   In short,

9  (a) as of June 2009 (and before Khan artificially dissected and transferred out RIL's assets

10  to RMail and RComm), the value of just Debtor's common shares in RIL was between

11  $3.8M and $14M, derived from a $3.85 preferred share pricing as of said date (and without

12  accounting for the $5.75 preferred share pricing as of late 2012, which causes the value of

13  the commons to have increased as well (as the value of the commons is extrapolated from

14  the enterprise value.   As the preferred share prices continued upward to $5.75 per share,

15  the value of the commons, too, increase, and therefore the value of Khan's common shares

16  also increased (See, Ex. 9 and compare 2/07 ($2.04) to 6/09 ($2.43) common share

17  valuation derived from preferred shares at $3.00 and $3.85 per, respectively); and (b)

18  Debtor's preferred shares in RComm (RIL preferred shares that were transferred and

19  exchanged into preferred shares in RComm), are worth at least the $1M (183,000 pref

20  shares x $5.75).   *In re Marriage of Connolly* (1979) 23, Cal.3d 590.

21      Between Khan's deliberate withholding of financial records, bank statements,

22  equity contributions, IP asset valuations and IP settlements and coupled with the value of

23  Khan's shares based on the determinations made the experts and the Superior Court and

24  based on Khan's own admissions, in addition to Khan's debts making him ineligible for

25  Chapter 13, Khan's assets demonstrate that the best interests of the creditors and the estate

26  will only have an opportunity to be realized vis-à-vis a Chapter 7 conversion and the

27  immediate appointment of a trustee to seize and liquidate the Khan interests in the

28

---

4  See, Exs. 9 (p. 3, Sched. 3) & 14 (Ex. 5B therein).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

companies and marshal the corporate assets to be available for distribution or sale.

**B.**    **As Khan Was/Is Ineligible To File & Maintain This Chapter 13 Case And "Cause" Under Section 1307(c) Is Present, Conversion To Chapter 7 Is Warranted.**

11 U.S.C. § 1307(c) allows the Court, upon a showing of cause, to convert the Chapter 13 Bankruptcy case to a Chapter 7 case (or dismiss the Chapter 13) "whichever is in the best interests of creditors and the estate."    Evaluating whether a Chapter 13 case should be dismissed or converted is a two-step process.    Once the court determines that cause exists (here, for example, ineligibility due to the amount of pre-petition debts), the court must then decide between conversion and dismissal based upon the best interest of the creditors.    *In re Nelson* (9th Cir. BAP 2006) 343 B.R. 671, 675.

**1.    The Law Re: Determining Chapter 13 Eligibility.**

As an overview, the maximum threshold of unsecured debt a debtor may have to file and maintain a Chapter 13 case is $383,175.00, effective as of the April 1, 2013 adjustment.    11 U.S.C. §109(e).    If a debtor is not eligible for relief under Chapter 13, that ineligibility is cause for dismissal under §1307(c).    8 *COLLIER ON BANKRUPTCY*, ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005).

Under Section 109(e), the determination of the pre-petition debts is guided by various statutes and case authority.    Under the Bankruptcy Code, a debt means "liability on a claim." 11 U.S.C. § 101(12).    A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured [.]" 11 USC § 101(5)(A).    In evaluating the Debtor's debts for purposes of Chapter 13 eligibility, the Court assesses whether the debt/claim in question is noncontingent and liquidated.    11 USC Section 109(e).    To that end, "[T]he case law uniformly holds that 'if all events giving rise to liability occurred prior to the filing of the bankruptcy petition,' the debt is not contingent." *In Re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (affirmed denial of C13 Plan where pre-petition sums were neither contingent or unliquidated); *In Re Keenan*, 201

9

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

B.R. 263, 264-265 (USBC SD Calif. 1996) (debtor motion requesting estimation of creditor's claim was denied where claim was neither contingent ["All of the events upon which liability could be imposed occurred prepetition. Accordingly, her claim is not contingent, and is not amenable to estimation under Section 502(c) on that ground."] or unliquidated). Moreover, a claim is liquidated where it is subject to "ready determination and precision in computation of the amount due." *In Re Fostvedt*, supra; *In Re Keenan*, supra, at p. 265-266 (state court's determination and ability, based on the status of the proceedings there, to determine the sum due renders the claim liquidated, barring estimation under Section 502); *In Re Wenberg*, 902 F.2d 768 (9th Cir. 1990) (state court's post-petition award of attorneys' fees and costs as part of that court's pre-petition award/judgment against debtor ***constituted part of the "liquidated debt for purpose of determining debtor eligibility under 11 U.S.C. Section 109(e).")*** (Emphasis Added).[5]

### 2. The Law re: Other Indicia of "Cause" For Conversion/Dismissal Under Section 1307(c).

For Chapter 13 cases, Section 1307(c) specifically enumerates ten non-exhaustive circumstances in which a court may dismiss a case of convert it to Chapter 7. *Ekeke v. United States*, 133 B.R. 450, 452 (S.D. Il. 1991) ("The listed `causes' are not exhaustive, nor is the court limited to the listed `causes.'"). The language in 1307(c) parallels the language contained in 1112(b), which governs dismissal and conversion in Chapter 11 cases. *In re Ferri*, 2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr. D.N.M. 2010). Section 1307(c) also requires "notice and a hearing" prior to conversion.

Both 11 U.S.C. § 1307(c) and 11 U.S.C. § 1112(b) establish a two-step process for considering the question of conversion or dismissal. *In re Nelson*, 343 B.R. 671, 674 (9th

---

5 The amount of a debtor's debt for Chapter 13 eligibility purposes under § 109(e) is normally determined by reference to the schedules. *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001). However, the Bankruptcy Court is permitted to consider matters beyond the schedules in assessing the debtor's eligibility and bad faith. *In Re Guastella*, *supra* at 918 (Affirmed order granting motion to dismiss for ineligibility under Chapter 13 and finding bad faith filing of schedules in conflict with state court tentative decision in pending litigation).

1  Cir. BAP 2006) (Sections 1307(c) and 1112(b) "establish a two-step analysis for dealing

2  with questions of conversion and dismissal": (a) cause must be established, and (b) "a

3  choice must be made between conversion and dismissal based on the `best interest of

4  creditors and the estate.'"). The choice of one remedy over the other is to be made upon

5  consideration of the best interests of creditors and the estate.   11 U.S.C. § 1307(c); *In re*

6  *Jensen*, 425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010).   **The interests of the debtor**

7  **are not paramount. Generally, a case should be converted rather than dismissed**

8  **when there are assets available for distribution to creditors.**" William L. Norton, Jr. &

9  William L. Norton III, *Norton Bankruptcy Law and Practice*, 3rd Ed. § 148:1 (2012)

10  (Emphasis Added).   In considering whether to grant a § 1307(c) conversion motion, the

11  court may consider only the best interests of the creditors and the estate; the debtor's best

12  interests cannot be considered.   *In re Sobczak,* 369 B.R. 512, 518 (9th Cir. BAP 2007).

13      In addition to ineligibility based on the sum of pre-petition debts of the debtor, there

14  are other indicia of "cause" which warrant an order granting a motion to convert and policy

15  reasons for conversion abound as well.   *First*, the policy reasons for conversion to Chapter

16  7, over dismissal, are inherent to the purpose of Section 109(e) – to protect and promote the

17  best interests of the creditors and the estate.   The Court in *In re Henson*, 289 B.R. 741

18  (2003) provided guiding analysis:

19  "If the case were dismissed with prejudice, Creditor, Zlotoff,
20  Wells Fargo Bank, the Internal Revenue Service, and anyone
    else to whom Debtor incurred a pre-petition or post-petition
21  debt would have to compete with each other for such assets as
    could be located (including whatever Debtor may have taken,
22  or had sent, to Canada). **However, if the case were converted**
23  **to Chapter 7, § 348 would apply to provide that all pre-conversion**
    **creditors and claimants would receive whatever pre-conversion assets**
24  **were available in an orderly distribution conducted by a professional**
25  **Chapter 7 Trustee according to the priorities fixed by the Code**. With
    respect to Creditor's judgment for willful infringement, Creditor has argued
26  that such a claim would be non-dischargeable in Chapter 7 under
    § 523(a)(6)—that may or may not be so pursuant to recent
27  Case law such as *In re Jercich*, 238 F.3d 1202 (9th Cir.2001)
28  and *In re Su*, 290 F.3d 1140 (9th Cir.2002), but Creditor

11

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

would have a chance to test its theory in Chapter 7 and, if successful, could pursue Debtor outside of bankruptcy just as if the case had been dismissed…. **Finally, a Chapter 7 Trustee could apply § 547 and § 549 to avoid, respectively, any pre-petition preferential transfers and unauthorized postpetition transfers, which remedies are provided by the Code but not available to creditors outside of bankruptcy.** As noted by *Staff* (at 260): 'The standard for choosing conversion or dismissal based on "the best interest of creditors and the estate" implies a balancing test to be applied through case-by-case analysis. In the end, the determination is a matter for sound judicial discretion.' **In this case, the interests at stake would be better served through conversion of the case for administration by a Chapter 7 Trustee than through dismissal of the case. Conversion will place the estate in the hands of an independent Court-appointed Trustee, preserve such assets as exist and allow for potential recovery of additional ones through use of avoiding powers, maintain the Code's priorities among creditors in an orderly distribution, and permit Creditor to seek exception of its claim from discharge to pursue Debtor outside of bankruptcy if it wishes to do so. On balance, that result is preferable to dismissal, which would leave all creditors and claimants to fend for themselves in State Court, with an absent Debtor and none of the avoiding powers provided by the Code.** The reasons supporting conversion over dismissal are equally applicable regardless of whether the cause to remove the case from Chapter 13 is a bad faith filing, unreasonable and prejudicial delay, or any other form of cause." (Emphasis Added).

As demonstrated more fully below, Khan has assets - personally and which he controls through his corporations – which, when liquidated, provide a substantial source of recovery for the creditors and estate.    Allowing Khan's continued control over, concealment of and use of the assets to the great prejudice of the creditors and estate is abhorrent to the very policy purpose behind Section 109(e) and an abuse of the bankruptcy process.

*Second*, additional 'cause' – beyond ineligibility due to the amount of pre-petition debt – is established through a variety of indicia including the debtor's bad faith. In addition to the factors specifically enumerated in Section 1307(c), a Chapter 13 petition filed in bad faith may be dismissed for "cause." *In re Leavitt* (9th Cir. 1999) 171 F.3d

12

1    1219, 1224-1225; *In re Eisen* (9th Cir. 1994) 14 F.3d 469, 470.   It is well established that

2    lack of good faith constitutes "cause" to invoke the relief under Section 1307(c).[6]   The *In*

3    *Re Henson* Court further discussed the bad faith standard:    "In the Ninth Circuit, an

4    additional form of 'cause' for involuntary dismissal consists of filing a Chapter 13 petition

5    in bad faith, *see In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994) ("*Eisen*"): A Chapter 13

6    petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)

7    [citations omitted].... To determine bad faith a bankruptcy judge must review the 'totality

8    of the circumstances.' *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982). A judge should ask

9    whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the

10   Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable

11   manner." *Id.* at 1390; *In re Leavitt, supra,* 171 F.3d at 1224 [Debtor's initial schedules

12   undervalued assets and Debtor offered nothing to largest unsecured creditor which was

13   deemed inequitable considering Debtor's assets]; *In re Eisen, supra* [Chapter 13 petition

14   dismissal appropriate as having been filed in "bad faith" based in part upon debtor's

15   contradictory and misleading statements of his property interests; a factor relevant in

16   determining whether a Chapter 13 Petition has been filed in bad faith includes

17   misrepresentations of fact by debtor in his Plan or **any evidence that debtor filed his**

18   **Petition in an inequitable manner**]; *In re Alt* (6th Cir. 2002) 305 F3d 413, 421 (Chapter

19   13 petition dismissed as having been filed in "bad faith" where Debtor understated income

20   and failed to schedule tax debt that put her over the jurisdictional limit.).   "A debtor's

21   history of filings and dismissals is relevant." *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.

---

6 "[W]e have held that bad faith does provide "cause" to dismiss Chapter 11 and Chapter
13 bankruptcy petitions...The Bankruptcy Code specifically mentions good faith in
Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed
in good faith.   In *[Eisen v. Curry (In re Eisen),* 14 F.3d 469 (9th Cir. 1994),] we linked the
good faith requirement implicit in a Chapter 13 bankruptcy with the good faith requirement
for proposing a payment plan when we stated that '[t]o determine if a petition has been
filed in bad faith courts are guided by the standards used to evaluate whether a plan has
been proposed in bad faith.'...The Bankruptcy Code's language and the protracted
relationship between reorganization debtors and their creditors lead us to conclude that bad
faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13
petition..."   *Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1192-93 (9th Cir. 2000).

13

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   1985).   Bad faith also exists where the debtor only intended to defeat state court litigation.

2   *In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986); *In Re Docco*, 2010 WL 703113

3   (N.D. Calif. 2010).   It should further be noted that a finding of bad faith does **not** require

4   fraudulent intent on the part of the Debtor.   *Leavitt, supra*, at 1224.

5         Conversion to Chapter 7 from Chapter 13 is also warranted where the Debtor has

6   not presented and cannot present a confirmable plan.   *In Re Lindsey*, 183 B.R. 624 (D.

7   Idaho 1995).   In *In Re Crittenden*, 2012 WL 1492321 (D. Montana 2012), the Bankruptcy

8   Court iterated the test for determining whether a Chapter 13 plan was submitted in good

9   faith:

10        "In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in
    determining whether a chapter 13 plan was proposed in good

11  faith, a bankruptcy court should consider (1) whether the
    debtor misrepresented facts in his or her petition or plan,

12  unfairly manipulated the Code, or otherwise filed his or her

13  petition or plan in an inequitable manner; (2) the debtor's
    history of filings and dismissals; (3) whether the debtor

14  intended to defeat state court litigation; and (4) whether
    egregious behavior is present. See also *In re Cavanagh*, 250

15  B.R. 107, 114 (9th Cir. BAP 2000).   After considering the
    *Leavitt* factors and the evidence in this case, the Court concludes

16  that conversion of the case to Chapter 7 is in the best interests of
    creditors and the estate."

17  

18  Under anyone of the above standards, an order converting Khan's case to Chapter 7 is also

19  supported by good cause beyond Khan's patent ineligibility for Chapter 13 relief.

20        **3.**     <u>**Khan Is Ineligible For Chapter 13 Case; As Such, Cause**</u>

21  <u>**For Conversion Is Present.**</u>

22        *First*, Barton's claim against Khan – documented through a series of pre-petition

23  and post stay-being-lifted orders and Judgment – is and was non-contingent and liquidated

24  as of the petition filing date.   As such, because the Barton claim exceeds $4M against

25  Khan, Khan is ineligible for Chapter 13 and conversion to Chapter 7 is warranted.

26        The history of the Pre-Petition State Court Action is not subject to any good faith

27  dispute by Khan.   See, Section I(A)(1) above.   Here, as of April 12, 2013, pre-petition,

28  the Superior Court has already adjudged (in August 2012) Khan to have committed fraud –

corporate resolutions forged (cutting and pasting Barton's signatures on 'back-dated'

14

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

resolutions designed to strip Barton of his shares in RIL), corporate shareholder registries

destroyed (to hide the evidence of Barton's share ownership), etc., and awarded damages

and the return of Barton's Shares.   The Court had conducted a three day punitive damages

phase trial and, thereafter, having decided to issue share value damages rather than what

would have been (due to the asset transfers by Khan and Tomkow from RIL to

RMail/RComm) the inequitable return to Barton of shares in an asset-gutted RIL,

conducted several additional trial hearings regarding share valuation damages and

commissioned and received a valuation report from an independent expert.   The final step

for the Court was "arithmetic":   Pick the common share value (the Court chose the [Khan

suggested] independent expert's value) and multiply it by Barton's 6,016,500 common

shares and publish his share damages award (and, for punitive damages consideration,

multiply the same per common share value by the Khan and Tomkow common shares as

part of the Court's net worth evaluation).   Ex. 25, p. 100:2-14.

Yet, just days after the cause was submitted for the Court to do just that, Khan filed

his midnight petition.   Hence, Khan knew, at the time of his Petition filing, that he would

not meet the Chapter 13 threshold because the Superior Court was poised to issue its

further damages award, which was readily determinable by the Court as all the evidence

(testimonial and documentary) had been introduced to the Court over a 12 month period.

Underscoring the improper motive for the petition filing, Khan did not seek additional time

to file his Chapter 13 plan; instead, he rushed to do so ahead of the Superior Court's RSOD

to leave the false impression that Khan's unsecured debt somehow was at a level that

qualified him for Chapter 13 status.   In mid-June 2013, the Superior Court issued its

Revised Statement of Decision establishing Khan's liability to Barton at over $4M (and, by

virtue of the Court's $.64 per common share value conclusion, Khan's own common shares

in RIL could then be valued at more than $3.9M).   Thereafter, the Superior Court's

Judgment was entered on August 30th, further affirming that Khan's indebtedness for

fraud, intentional breach of fiduciary duty, conversion exceeds $4M.   Under the facts and

controlling law, any plea by Khan that Barton's claim was anything but non-contingent and

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   liquidated would be folly.

2      *Second*, and independent of Barton's claims against Khan, the claims of other

3   creditors arising from pre-petition wrongful acts of Khan, Tomkow, et al. – including

4   creditors that Khan did not schedule – render Khan ineligible for Chapter 13.  *First*, RIL

5   has a claim of at least $1M against Khan and Tomkow for defense costs and, separately

6   though related, for the full amount (for indemnity) of the liability of RIL to Barton in the

7   Pre-Petition State Court action (liability which derives from Khan/Tomkow's (and others)

8   pre-petition fraud and breaches of fiduciary duty).  Pursuant to RIL's Bye-Laws (Ex. 8,

9   Para. 77.3), Khan and Tomkow were required to post bonds for the benefit of the

10   corporation as security for the fees and costs incurred by RIL in defending them in the

11   Pre-Petition State Court Action.  At the 341A hearing on May 28, 2013, Khan admitted

12   that he did not post that bond (and falsely claimed RIL, hit with the near $4M judgment

13   because of Khan, et al.'s fraud, is not a creditor in his case), a pre-petition wrongful act that

14   left and now leaves RIL as a creditor for the defense expenses and for the Barton Judgment.

15   Ex. 26, p. 34:8-35:8.    Had Khan posted the bond as required (and for at least the value of

16   the insurance policy which was depleted defending Khan/Tomkow and which would have

17   been available to RIL to pay some portion of the Judgment), RIL would then at least have

18   had a source of recovery (for fees/costs and/or indemnity) as RIL's $1M D&O policy was

19   fully exhausted in the litigation.  Ex. 28.   Clearly, the obligation to post the bond was a

20   pre-petition event (which should have been done part and parcel of RIL commencing the

21   defense of Khan and Tomkow when the Barton lawsuit was filed in January 2010.  Yet,

22   and underscoring their insider-control of RIL, Khan and Tomkow neither posted the bond

23   nor did they list RIL as a creditor and, as such, failed to give RIL's shareholders notice of

24   the bankruptcy proceedings as well.  Failing to schedule RIL as a creditor and RIL's

25   pre-petition claim of at least $1M (if not the full $4M due on the Barton Judgment) also

26   render Khan Chapter 13 ineligible.

27      *Third*, the myriad other proofs of claim filed against Khan in the Chapter 13 case

28   reflect pre-petition claims in the tens of millions.  The Court's docket reflects proofs of

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

claim – separate from Barton's POC – well beyond the Chapter 13 threshold (in an order of magnitude far in excess of 10).

Hence, pursuant to Section 1307(c), because the pre-petition claims against Khan exceed the maximum debts for Chapter 13 eligibility, Barton's Motion herein is well taken and conversion to Chapter 7 should be ordered.   For the reasons set forth in Section B(3) below, conversion is most definitely in the best interests of the creditors and estate of Khan and an independent trustee should be immediately appointed to seize the assets and take immediate steps to protect the interests of the creditors and the estate therein.

> **4.    Additional, Overwhelming Good Cause Exists Which Compels The Conversion of Khan's Bankruptcy To Chapter 7.**

In addition to Khan's ineligibility, this Court can rely on any number of other indicia of "cause" to grant the instant Motion and convert Khan's case to Chapter 7.

> **a)    Khan's Schedules Contain Misrepresentations and Conceal Material Assets.**

Ostensibly, since 2000, Debtor's entire livelihood and economic success is tied to his ownership and control of the RPost Companies – RIL, RMail and RComm and their affiliates and subsidiaries around the world.   However, to mislead the Court and Trustee, Khan has incredibly scheduled his shares in these three companies as valued at $0 and concealed and continues to conceal the financial details and documents of the RPost companies so as to interfere with the Trustee/Creditors' evaluation of what is already known to be Khan's bogus "$0" share valuations listed in his schedules.

*First*, Khan's RIL shares, at least as of June 2009 (and before Khan and Tomkow orchestrated the transfers of cash and IP out of RIL and usurped RIL's IP opportunities) are valued at at least the same $.64 per common share as the Superior Court determined. With at least 6M common shares in RIL, Khan's RIL share interest is worth at least $3.8M. That share value, moreover, does not account for at least $4M ($6M raised less the purported "accrued" expenses) in capital raised in RIL from July 2009-October 2010 which is unaccounted for in RIL's own financial records and which Khan continues to refuse to account for.   *Second*, Khan's preferred shares (which were in RIL and then were

17

apparently rolled into the reconstituted in RComm) are worth at least $1.035M; Khan

admitted that RComm was selling preferred shares (with all the restrictions Khan will

complain about in an Opposition) for $5.75 per preferred shares.   With 183,000 preferred

shares in his name, Khan's preferred shares in RComm are worth at least $1.045M.  *In Re*

*Marriage of Connolly*, *supra*.   Hence, Debtor's filing of his original schedules and

amended schedules both concealing the above-referenced valuations and then

misrepresenting that the value as "zero" constitute sufficient evidence of bad faith to justify

conversion (*In Re Gaustella* and *In Re Henson* ) and underscore Debtor's efforts to

manipulate and misuse the Bankruptcy proceedings.

    *Third*, Khan does not account for the RComm capital accumulation (above

purported "accrued" expenses) of at least $5M from March 2011 through July 2012 and

thereafter.   Khan has at least 750,000 common shares in RComm; if RComm has

additional equity (cash) above expenses and liabilities of several million dollars (a fair

conclusion but one which Khan's non-disclosure and obstruction is designed to thwart the

final determination thereof), then Khan's common shares have value (independent of the

enterprise value being determined).   *Fourth*, with respect to his RMail shares, Khan

would have the Court believe that the RIL's shareholders were informed of fully and

approved Khan/Tomkow's **(a)** transfer of $750,000-$1M from RIL to RMail for the

purpose of allowing RMail to "buy" two very valuable, core patents (the "**219/334**

**Patents**"), **(b)** secret set-up of an insider Bermuda company that Khan/Tomkow would

only allegedly be 10% shareholders of but Khan (who admits that he controls all of the

RPost Companies purse strings and is the only person able to answer about the company's

business affairs [Ex. 26, p. 25:22-27:25; 28:16-23] has allowed a purported salesman from

Costa Rica to own and control 90% of the entity that controls the key patents to RIL's

business, while the investors in RIL and, later RComm, have no interest in RMail or the IP

(and no say in the terms that Khan imposes for this "license back" of only a part of the IP

which was acquired using RIL's funds/guaranty); **(c)** plan, while purporting to "license

back" to RIL the patents bought with RIL's funds, to carve out from the patent – for their

1  own aggrandizement – a field of use within the 219/334 Patents that verifies electronic

2  banking and on line7 sales transactions and then secretly (with no disclosure to and

3  approval by the RIL/RComm shareholders) prosecutes actions and retains the settlements;

4  (d) settle, in March 2013, just these "carve-out" patent infringement claims against

5  Amazon/PayPal but refuse to disclose the payments and other consideration received by

6  RMail (or Khan, etc.) and refuse to disclose the settlement agreement, notwithstanding

7  their occurrence within 90 days of the filing; and (e) settle, in April 2013 with the press

8  announcement the day after the petition filing, that "RPost" has settled another IP action

9  against Zix Corporation (a competitor in the email verification platform), but refuse to

10  disclose the payments and other consideration received by the RPost entity(ies) and refuse

11  to disclose the settlement agreement.   And, as noted below, Khan has defiantly refused to

12  produce the bank statements and other financial information for the RIL/RComm/RMail

13  entities so that the Trustee and creditors could assess the duplicitous $0 share valuations

14  that Khan has represented under oath.   If RMail received $1M from Amazon/PayPal,

15  Khan's shares – and there is little doubt that Khan owns (and/or beneficially owns and

16  controls) far more than 5% of RMail and that the 90% "majority" purported shareholder is

17  a strawman (since Khan/RIL set up the corporation and bank account for the shareholder's

18  company in Belize and used Khan's prior business name – Momentex – as the shill for his

19

20  7 Imagine the number of electronic banking and sales transactions that occur every day in
just the U.S. and then imagine what the value of the patent is that allows for verification of
21  those transactions.   Even RPost's press releases tout that its patents cover the tracking of
22  "billions" of business advertising emails (Ex. 6, Ex. 6 therein).   Hence, it is no surprise
then that Khan refuses to provide the Trustee and Creditors with the settlement amounts
23  and settlement documents in the SWIFT and Amazon/PayPal settlements because those
24  sums are likely sufficient to make a substantial contribution towards the payout of the
claims against Khan, including on Barton's Judgment.   **What is alarming, particularly**
25  **given the recent NSA matters in the news, is that an adjudged fraud and corporate**
**document forger, etc. (Khan) has the ability – through the RPost registered email**
26  **product which acts as a clearinghouse for all emails using its services – to view and**
27  **retain the emails and attachments thereto of government agencies, law firms,**
**insurance companies, etc. and do so without any accountability or safeguards to**
28  **ensure secrets are not being divulged, mis-used or worse.   Placing these assets in the**
**hands of a Trustee is all the more compelling under these circumstances.**

19

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   activities) – have substantial value (independent from the value that the IP itself has which

2   Khan's obstruction also seeks to prevent this Court/The Trustee/Creditors from learning

3   about and evaluation).

4          The Federal District Court in the Eastern District of Texas has viewed Khan's

5   duplicity in that Court – concealing these bankruptcy proceedings and the fraud

6   determination - as grounds to stay the IP litigation which Khan his prosecuting for

7   RIL/RMail/RComm.    Ex. 23.    Conversely, by concealing the IP litigation, settlements

8   and cash/equity received from the scheduled, Khan continues to play fast and loose, telling

9   one Court only what Khan wants it to know and telling this Court only what Khan wants to

10  reveal to suit the purpose of this sham Chapter 13 filing and obstructing the discovery and

11  consideration of assets that impact the value of the shares in the RPost companies.

12         Khan has (1) concealed assets which he controls through the RPost Entities

13  (including the RMail entity [that Khan, Tomkow and a strawman "salesman" own – to the

14  exclusion of the several hundred RIL/RComm investors] that now controls all of the

15  intellectual property after a series of inter-company transfers) including, without

16  limitation, valuable settlements between, for example, RMail and Amazon/PayPal (entered

17  into just a month before the Petition Filing Date) with the unaccounted for proceeds being

18  distributed to Khan's offshore (Belize, Cayman Islands and/or Bermuda) accounts while

19  Debtor has feigned an inability or lack of recollection as to the consideration paid by

20  Amazon/PayPal when questioned at the 341A hearing; (2) concealed the other extensive

21  intellectual property lawsuits being litigated in the Eastern District of Texas, which legal

22  proceedings have substantial value to the estate and Khan's shares in the corporations; and

23  (3) has provided patently evasive and non-responsive "answers" to asset and liability

24  inquiries by the U.S. Trustee and Creditors' counsel and has failed to comply with the

25  Trustee's requests (Ex. 5; Ex. 26, pp. 16, 16 & 21) for shareholder lists and capital

26  contributed, all banking information (accounts and statements) for all of the RPost entities

27  in the U.S. and abroad (of which there are nearly two dozen per RPost's own website [Ex.

28  6, {Exs. 5 & 6 therein}) and copies of the settlement agreements with Amazon/PayPal and

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   Zix Corporation (and the records tracing the proceeds from these March/April 2013

2   settlements – none of which were disclosed on the Debtor's schedules, original or

3   amended.  Exs.1, 2, 3 & 7.

**b)    Despite the Trustee's Written And Oral Requests, Khan Has Defiantly Refused To Produce Records And Information Of His Assets Including the Corporate Assets That He Controls, Thereby Misusing and Abusing The Bankruptcy System.**

7    Khan's evasion and defiant refusal to provide the Trustee and Creditors with asset

8   information and supporting documentation is in and of itself an abuse of the Bankruptcy

9   process and sufficient 'cause' for conversion.   At the 341A hearing on May 28, 2013 and

10   in the Trustee's subsequently filed objections, the Trustee requested (**a**) all bank statements

11   and all the financial records of the corporate entities; (**b**) complete lists with contact

12   information of the shareholders of the corporations – RIL, RComm and RMail, the capital

13   paid in by each shareholder and where that capital was deposited and when and where the

14   funds are now; and (**c**) the settlement agreements that were entered into in the 45 days

15   before the Petition was filed including, without limitation, settlements with Amazon,

16   PayPal and Zix Corporation and where those settlement funds were received and

17   distributed.    Khan defied the Trustee, failing to produce the required information and

18   documentation.[8]   Khan's fast and loose repertoire with the facts and the obligation to

19   speak fully and truthfully is not limited to his Petition filing here.   While hurriedly

20

---

21   [8] Instead, and in sharp contrast to a debtor who is compliant, what Khan did produce was

22   900 pages of largely uninformative tax returns and then a summary cover sheet with redacted banking institutions used by each RPost entity (though not represented as

23   complete), **but no bank statements whatsoever and no accounting for the $6M in

24   capital RIL raised from July 2009 through October 2010 or for the minimum $5M in capital RComm raised from March 2011 through July 2012 (or the millions raised

25   thereafter).   Khan did not produce the RIL/RComm/RMail shareholder information and contacts, the capital contribution amounts, dates of the capital

26   contributions and in which bank's accounts for which entities the funds were deposited.   And, Khan refused to produce the settlement agreements entered into in

27   March and April 2013 with Amazon, PayPal and Zix corporation or account for the proceeds of the settlements, the accounts the settlement funds were deposited in and

28   where the funds were distributed to therefrom.**

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   attempting to settle out the IP lawsuits Khan was pursuing in the names of

2   RIL/RComm/RMail in the U.S. District Court in the Eastern District of Texas, Khan and

3   his counsel there concealed his bankruptcy and the Superior Court fraud determination

4   from the judge presiding over said IP litigation.    The Federal Court there has since issued

5   a stay of proceedings (issued just 2 days before the trial was to begin), underscoring the

6   Court's rightful concern about the relationship between Debtor's fraud and bankruptcy and

7   the disposition of corporate assets.    As safeguarding the interests of the estate and

8   creditors is the paramount consideration, Khan's abuse of the bankruptcy process and

9   deliberate non-compliance should not be countenanced.

10

11              c)        **Khan Had At Least $315,000 In Net Worth As Of The
                          Petition Date (Independent of The Value of His Shares In
12                        The RPost Companies And The Corporate Assets He
                          Controls); The Petition Was Filed Solely To Interfere With
13                        the Pre-Petition Superior Court Action.**

14          Without even disclosing or factoring in his shares in and the assets of the RPost

15   Companies he controls as an officer/director/shareholder (Khan being the signatory on all

16   the entities bank accounts), at the time of the Petition filing, Khan has admitted to the

17   Superior Court that his net worth was at least $315,000.00.    Ex. 16, p.10:15-18.

18   Moreover, even the initial $100,000.00 awarded to Barton was not sufficient to put Khan's

19   net worth in the negative or justify the instant Petition filing, for one simple reason: Khan

20   represented to the Superior Court that RIL, not Khan, had set aside $100,000 to pay that

21   portion of the Superior Court's award in the initial Statement of Decision.    Ex. 11, p.

22   86:19-24; Ex. 13, p. 45:20-25.    Further, Khan concedes that all of his credit card bills were

23   being paid by RIL/RComm (Ex.11, p. 6:11-23), rendering meritless on its face any

24   assertion that Khan faced credit card debt of any significance not being covered by the

25   corporations he controls.

26          Instead, what is crystal clear is that Khan's midnight Petition was filed the weekend

27   after the Superior Court (with acknowledgment by Khan's state court counsel) determined

28   that the matter was submitted for further decision effective April 12, 2013.    Ex. 25. p.
     102:6-7, 104:16-105:13.    Here, Khan filed the Petition just following the close of

---

22

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   evidence in the Pre-Petition Superior Court Action on Sunday, April 14th, and while that

2   Court was ready to issue its monetary award after more than 1 year of trial activities (three

3   trial phases); Khan then quickly filed his purported Chapter 13 Plan (Ex. 4) before the

4   Superior Court issued its further Statement of Decision and suggested to this Court that his

5   liability in that action was merely $100,000.    After the stay was lifted, the Superior Court

6   issued its RSOD 3 months ago but Khan and his counsel have refused to withdraw the inapt

7   "plan" or convert this case, have presented no other plan (and cannot do so) and continue to

8   propagate the fraudulent schedules that conceal the corporate assets (and, hence, share

9   values), all to the prejudice of the creditors and the estate.   Khan used the Petition filing to

10  attempt to suggest that his liability was only $100,000 (putting aside that he represented

11  that RIL would pay that sum) and rushed to submit a Chapter 13 plan before the Superior

12  Court issued its RSOD establishing its findings regarding the value of common shares

13  which necessarily include the value of Khan's 6M common shares in RIL.   The Petition

14  was filed, therefore, as part of Khan's plan to create a false impression before this Court

15  and the Trustee and his failure to withdraw same underscores the improper purpose of the

16  Petition filing and continued case prosecution by Khan.

17          Only a Chapter 7 conversion will rectify Khan's charade and allow the appointment

18  of an independent Trustee to marshal the assets and provide for their orderly sale and

19  distribution to satisfy the creditors and the estate; in sharp contrast, Khan has demonstrated

20  a deliberate disregard for the authority of the Courts and an unchecked willingness to say

21  anything to any court and conceal the material information that a debtor acting in good

22  faith would have long ago disclosed in full and, at worst, disclosed when called out by the

23  Chapter 13 to do so.

24          **d)     Khan's "Plan" Is Not Confirmable And Is
25          Inequitable Given The Substantial Claims Against
        Him/The Estate.**

26          Even assuming *arguendo* that Khan's Chapter 13 ineligibility and other "cause"

27  does not somehow compel conversion and his bad faith in filing and prosecuting this

28  Chapter 13 case were not rampantly evident, Khan's failure to account for, via submission

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

of an amended plan, Barton's liquidated fraud claim (or the claims of the other creditors)
and to present any payment plan concerning same is considered "bad faith" under Section
1307(c)(1).   *In re Goeb* (1982) 675 F2d 1386 [Court can consider lack of repayment of
unsecured claims in 'bad faith' analysis]).   The deliberately hurried plan – derived from
schedules which conceal and mislead regarding Khan's assets and which blatantly omits
any reference to the other pre-petition claims of RIL and other shareholders of the RPost
Companies and attempts to avoid the Barton Judgment – could not be confirmed from
either an undisclosed asset or misrepresented debt perspective.   The instant plan was
presented in bad faith and is not confirmable and, therefore, conversion of the case to
Chapter 7 is warranted.

**5.    Conversion to Chapter 7 Is Clearly In The Best Interests of
Khan's Creditors And The Estate.**

Under controlling law and applicable principles, conversion of Khan's Chapter 13
case to a Chapter 7 case is undoubtedly and undeniably in the best interest of all of the
creditors and the estate.   Chapter 7 is the only equitable method by which – for the
administrative, procedural and substantive reasons articulated in *Henson* – all of Khan's
creditors have the best opportunity to receive the most amount of, if not all of, the sums due
from him.   Khan has manipulated and concealed assets (despite opportunities to reverse
his duplicity), has secreted away the undisclosed assets (IP litigation settlements, for
example), defiantly refused to comply with the Trustee's documentary and information
requests at the 341A hearings and in its objections, filed the Chapter 13 case for an
improper purpose involving the Pre-Petition State Court Action, and has played and
continues to play fast and loose with the Courts.

Debtor's control over the RPost entities (and his common and preferred shares
therein) reflect an asset base that, upon Chapter 7 liquidation and assuming no waste or
other wrongful acts undertaken by or at the direction of Debtor concerning said assets, will
be sufficient to pay movant and all unsecured creditors that which they are owed in full and
cover the costs incurred by the trustee and his/her employed professionals.   Conversion of
Debtor's Bankruptcy case to Chapter 7 with the Trustee thereupon assuming managerial

24

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

control (and employing such professionals in connection therewith) is in the best interests of the creditors[9] and, further, to prevent Debtor's continuing fraud upon this Court, the creditors and the judicial system in other myriad jurisdictions.

## II.    CONCLUSION.

Khan does not qualify for Chapter 13 and, on that ground alone, conversion to Chapter 7 is required and, given the substantial assets under Khan's control and in his possession, is in the best interests of the creditors and the estate.   In addition, conversion of this case to a Chapter 7 case is supported by cause as Khan's petition and schedules have concealed and misrepresented assets, Khan has subverted the Bankruptcy process, Khan (with admitted net worth in excess of $310,000 (without even accounting for his shares and assets under control in the RPost entities)) filed the Petition to interfere with the Pre-Petition State Court Action (so as to attempt to have a "plan confirmed" before the Superior Court's final judgment damages award was issued), Khan has no confirmable plan and the best interests of the creditors and estate are overwhelming protected vis-à-vis a conversion to Chapter 7.

Debtor Khan's fraud before the Los Angeles Superior Court, the US District Court in Texas and now this Court is irreconcilable with the maintenance of the Chapter 13 case and the avoidance of a Chapter 7 conversion.   Barton's Motion is well taken and should be granted.   A Chapter 7 trustee should be appointed forthwith and a restraining order imposed on Debtor from taking any actions regarding his assets pending further order of this Court.

Date:   September 13, 2013     McGARRIGLE, KENNEY & ZAMPIELLO, APC

By: _____

Patrick C. McGarrigle, Esq.
Michael J. Kenney, Esq.
Attorneys for Creditor/Adversary Plaintiff
Kenneth Barton

---

[9] Upon conversion, Barton requests that the Court deem Barton's Adversary Complaint, filed on July 26, 2013 (and Debtor's answer thereto), as filed in the converted Chapter 7 case (and that such administration also apply to the other adversary complaint filed in the Khan bankruptcy).

25

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

## DECLARATION OF PATRICK C. MCGARRIGLE

I, Patrick C. McGarrigle, declare:

1.      I am an attorney, duly licensed to practice before this Court, and the principal McGarrigle, Kenney & Zampiello, APC, counsel for Creditor/Adversary Plaintiff Kenneth Barton (**"Barton"**).   The following is based upon my personal knowledge and, if called upon, I could and would competently testify to the truth thereof.

2.      Attached to the accompanying Compendium of Evidence as Exhibit "1" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Bankruptcy Petition (the **"Petition"**) filed by Debtor Zafar Khan ("**Khan**" or "**Debtor**") on April 14, 2013 with the United States Bankruptcy Court, Central District.

3.      Attached to the accompanying Compendium of Evidence as Exhibit "2" and incorporated fully herein by this reference is a true and correct copy of Khan's Summary of Schedules, filed with this Court on April 29, 2013, regarding his Petition in this Bankruptcy case.

4.      Attached to the accompanying Compendium of Evidence as Exhibit "3" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules, filed with this Court on May 3, 2013, regarding his Petition in this Bankruptcy case.

5.      Attached to the accompanying Compendium of Evidence as Exhibit "4" and incorporated fully herein by this reference is a true and correct copy of Khan's "Chapter 13 Plan," filed with this Court on April 29, 2013.

6.      Attached to the accompanying Compendium of Evidence as Exhibit "5" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Trustee's Objections to Khan's Chapter 13 Plan, filed with this Court on May 30, 2013.

7.      Attached to the accompanying Compendium of Evidence as Exhibit "6" and incorporated fully herein by this reference is a true and correct copy of Barton's Objections to Khan's Chapter 13 Plan, filed with this Court in May 2013.

1

8.     Attached to the accompanying Compendium of Evidence s Exhibit "7" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules filed in this Bankruptcy Case on or about June 28, 2013.

9.     Attached to the accompanying Compendium of Evidence as Exhibit "8" and incorporated fully herein by this reference is a true and correct copy of the Bye-Laws of Rpost International Limited ("RIL"), which RIL produced (through Khan) to my office in approximately January 2006.

10.     Attached to the accompanying Compendium of Evidence as Exhibit "9" and incorporated fully herein by this reference is a true and correct copy of the common share valuation report of Jaime d'Almeida of Duff & Phelps concerning the value of the common shares of RIL as of June/July 2009, which report I moved into and which the Los Angeles Superior Court admitted into evidence in the trial of *Barton v. RPost International Limited; Zafar Khan; Terrance Tomkow; et al.*, LASC Case No. YC061581 (the "**Pre-Petition Superior Court Action**").     Duff & Phelps concluded, based on the then $3.85 per preferred share pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method, that RIL's enterprise value was $100M and the common share value (per common share) was $2.42 per common share.

11.     Attached to the accompanying Compendium of Evidence as Exhibit "10" and incorporated fully herein by this reference is a true and correct copy of the Los Angeles Superior Court's August 3, 2012 Statement of Decision (the "**LASC SOD**") in the Pre-Petition Superior Court Action, following the first (liability) phase of the trial therein.

12.     Attached to the accompanying Compendium of Evidence as Exhibit "11" and incorporated fully herein by this reference is a true and correct copy of excerpts of the November 20, 2012 transcript which was Day 1 of the punitive damages phase of the trial in the Pre-Petition Superior Court Action.

13.     Attached to the accompanying Compendium of Evidence as Exhibit "12" and incorporated fully herein by this reference is a true and correct copy of excerpts of the

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1    November 21, 2012 transcript which was Day 2 of the punitive damages phase of the trial

2    in the Pre-Petition Superior Court Action.

3          14.    Attached to the accompanying Compendium of Evidence as Exhibit "13"

4    and incorporated fully herein by this reference is a true and correct copy of excerpts of the

5    November 26, 2013 transcript which was Day 3 of the punitive damages phase of the trial

6    in the Pre-Petition Superior Court Action.

7          15.    Attached to the accompanying Compendium of Evidence as Exhibit "14"

8    and incorporated fully herein by this reference is a true and correct copy of the report of the

9    expert offered by RIL to the Los Angeles Superior Court and appointed thereupon by said

10    Court as an independent valuation expert, Dr. Paul Wazzan, dated March 8, 2013, which

11    report was submitted directly to the Court and all counsel (including myself) pursuant to

12    Court Order.   Dr. Wazzan concluded, also based on the then $3.85 per preferred share

13    pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method (but

14    utilizing two different inputs than Duff & Phelps, that RIL's enterprise value was $33M

15    and the common share value (per common share) was $.64 per common share.

16          16.    In the Pre-Petition Superior Court Action, the Superior Court issued its SOD

17    following the liability phase (which initially awarded Barton the return of his shares in RIL

18    which had been procured by RIL/Khan/Tomkow through forgery and fraud and thereafter

19    converted) and found that a punitive damages phase would proceed.   After a period of

20    punitive damages discovery, the punitive damages phase of the trial proceeded on

21    November 20, 21 and 16, 2012.   At the conclusion of that trial, on November 26, 2012, the

22    Court concluded that, because of the asset transfers by Khan and Tomkow from RIL to

23    both RMail and RComm, the return to Barton of his shares would not be equitable or just;

24    the Court then proceeded to reconsider and revisit the award of damages and the

25    determination of the value of RIL and its common shares as of a June 2009 conversion

26    date.   Following further stipulated to meetings between the Court and the parties'

27    experts, the Court obtained proposed third party experts from which the Court to choose

28    and appoint as the Court's independent expert under the California Code of Civil

3

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

Procedure.   The Court selected the independent expert preferred by Khan/Tomkow/RIL,

Dr. Paul Wazzan, who thereafter reviewed materials and reports from the parties' experts,

issued his own report and submitted to examination before the Court on April 4, 2013 and

provided a supplemental report as of April 12, 2013, at which point the parties – Barton and

RIL/Khan/Tomkow agreed that the case was then deemed submitted for decision (which

the Court advised all parties that it was prepared to promptly proceed to do).

17.   Based on Khan's admissions in the Pre-Petition Superior Court Action,

Khan has 6,016,500 common shares in RIL but has also since indicated it is 6M shares.

18.   Attached to the accompanying Compendium of Evidence as Exhibit "15"

and incorporated fully herein by this reference is a true and correct copy of the Los Angeles

Superior Court's Punitive Damages Award and Revisions to Statement of Decision, dated

June 18, 2013.

19.   Attached to the accompanying Compendium of Evidence as Exhibit "16"

and incorporated fully herein by this reference is a true and correct copy of excerpts of

Khan's Motion to Reduce Punitive Damages filed on or about June 28, 2013 in the

Pre-Petition Superior Court Action, wherein Khan admits that his net worth is

$310,000.00.

20.   Attached to the accompanying Compendium of Evidence as Exhibit "17"

and incorporated fully herein by this reference is a true and correct copy of the "Judgment

After Court Trial" entered by the Court and filed on August 30, 2013 in the Pre-Petition

Superior Court Action.

21.   Attached to the accompanying Compendium of Evidence as Exhibit "18"

and incorporated fully herein by this reference is a true and correct copy of RIL's Federal

court Complaint in the Eastern District of Texas entitled *RPost International Limited v. Zix

Corporation*, Case No. 2:11-cv-00064-TJW-CE, filed on January 31, 2011 (the "**Zix

Action**").   The Zix Action was one of several alleged patent infringement actions filed by

RIL/RMail/RComm against national and multi-national corporations conducting business

in the email and electronic banking/transaction verification spaces.   Attached to the

4

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

Compendium of Evidence as Exhibits "19" and "20," respectively, are true and correct copies of the Order of Dismissal of the Zix Action (entered on April 12, 2013) and the RIL Press Release dated April 15, 2013 announcing the purportedly "confidential" settlement of the Zix Action.   As noted in the transcript of the May 26, 2013 341A examination of Mr. Khan, he refused to provide any of the settlement terms of the RIL-Zix settlement. And, despite the Trustee's request for production of the settlement agreement, Khan has refused to produce same and has not produced same to Barton or to the Trustee.

22.     Attached to the accompanying Compendium of Evidence as Exhibit "21" and incorporated fully herein by this reference is a true and correct copy of RMail Federal court Complaint in the Eastern District of Texas entitled *RMail v. Amazon*, Case No. 2:10-cv-00258-TJW, filed on July 21, 2010 (the "**Amazon Action**").   Attached to the Compendium of Evidence as Exhibit "22" is a true and correct copy of the Order of Dismissal of the Amazon Action (entered on March 13, 2013).   Unlike the Zix Action settlement, RMail did not announce in a press release that it had reached any settlement at all of the Amazon Action (and its companion, consolidated PayPal Action).   At his July 2, 2013 further 341A examination, Khan refused to provide any of the settlement terms of the Amazon/PayPal settlement.   And, despite the Trustee's request for production of the settlement agreement, Khan has refused to produce same and has not produced same to Barton or to the Trustee.

23.     Attached to the accompanying Compendium of Evidence as Exhibit "23" and incorporated fully herein by this reference is a true and correct copy of the Stay Order of the United States District Court, entered August 2, 2013, in the RIL/RMail/RComm action against Adobe Systems/EchoSign/Docusign (Eastern District Case No. 2:10-cv-00025-JRG [the "**Adobe Action**"], the remaining not-settled IP claims that exist in the consolidated action of which Amazon and PayPal were a part.   The Eastern District Court issued the Stay Order, not because of any disclosure to the Court by RIL/RMail/RComm or its principals, Khan & Tomkow but, because that Court there just learned (from Adobe's counsel through contacts with counsel for other RIL/RComm

5

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  shareholders [who have filed adversary complaints in the Khan/Tomkow bankruptcies]

2  and the undersigned as counsel for Barton that Khan and Tomkow had been adjudged to

3  have committed forgery and fraud and had personal bankruptcies pending in the Central

4  District of California.

5       24.    Attached to the accompanying Compendium of Evidence as Exhibit "24"

6  and incorporated fully herein by this reference is a true and correct copy of an RIL

7  shareholder meeting notice dated August 30, 2013, which RIL sent to certain shareholders

8  purporting to give notice of a shareholder meeting covering three years (2011-2013) and to

9  approve minutes from an alleged meeting from 2010, nearly four years ago.   This Notice

10  is particularly alarming since (a) in sharp contrast, RIL's counsel represented to the

11  Superior Court on the very same date that RPost had "complied with all corporate

12  formalities" (Ex. 15, p. 29), and (b) Khan/Tomkow are attempting to white-wash corporate

13  records covering periods where Khan/Tomkow were engaged in fraudulent asset transfers

14  from RIL to RMail and to RComm.

15       25.    Attached to the accompanying Compendium of Evidence as Exhibit "25"

16  and incorporated fully herein by this reference is a true and correct copy of excerpts of the

17  transcript of the April 4, 2013 valuation damages hearing before Judge Stuart M. Rice in

18  the Los Angeles Superior Court in the Pre-Petition State Court Action.

19       26.    Attached to the accompanying Compendium of Evidence as Exhibit "26"

20  and incorporated fully herein by this reference is a true and correct copy of the transcript of

21  the May 28, 2013 341A hearing of Debtor Khan, conducted by the Trustee and at which I

22  was present and made inquiries of Khan.

23       27.    Attached to the accompanying Compendium of Evidence as Exhibit "27"

24  and incorporated fully herein by this reference is a true and correct copy of the April 19,

25  2013 of the Superior Court's Minutes, stating that the Court was "prepared to rule" and

26  issue its award including punitive damages.

27       28.    Attached to the accompanying Compendium of Evidence as Exhibit "28"

28  and incorporated fully herein by this reference is a true and correct copy of the July 26,

6

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

2013 email letter I received from counsel for Carolina Casualty Insurance, RIL's insurer, confirming that RIL's Director's & Officer's (D&O) policy proceeds have been fully exhausted.   In other words, Khan and Tomkow, while failing to post a bond as security for their obligation to RIL to cover defense and indemnity obligations (Ex. 7, Para. 77.3), have caused the D&O policy to be exhausted.   As such, RIL, exposed to a $3.9M judgment in favor of Barton, has claims against Khan and Tomkow for the defense fees and costs and the judgment; yet, Khan and Tomkow did not schedule RIL as a creditor or the indemnity rights as a claim of the corporation.   Why?   It is clear that Khan and Tomkow will not acknowledge the patent conflict of interest of their continued status as the operational officers/directors of RIL/RComm/RMail.

29.     Attached to the accompanying Compendium of Evidence as Exhibit "29" and incorporated fully herein by this reference is a true and correct copy of Debtor Khan's Declaration in the *RMail et al v. Amazon, PayPal* litigation wherein he admits to having "carved out" for RMail's benefit only the functionality (the "field of use") of the 219/334 Patents that verify electronic transactions.   This sequestering of this valuable field of use for their own benefit and to the exclusion of the shareholders of RIL and RComm, notwithstanding that RIL's funds and guaranty were used to acquire the entire IP at issue, is and was a patent breach of fiduciary duty and conflict of interest through self-dealing and usurpation of RIL's corporate opportunities.

30.     Khan and Tomkow formed RMail in the Fall 2008 and syphoned off nearly a $1M of RIL cash in the summer of 2009 and into 2010 to put the 219/334 Patents in the control of Khan/Tomkow's insider company (RMail) and not RIL (which entity had signed the NDA and was set up to be the patent acquisition entity until Khan/Tomkow switched the name of the buyer in the contract, while keeping RIL as a guarantor of the entire purchase price).   See, Ex. 11 p. 27:5-15; 28:19-29:25; 30:15-23.   Khan and Tomkow plugged in the asset-less RMail as the buyer of the patents, swapping out RIL but still having RIL guaranty the purchase, and then had RIL "loan" RMail $754,000+ to acquire the 219/334 Patents - $554,000 being described as a "loan" to RMail (that never gets

repaid), $200,000 as a "license" fee and then $45,000 per year in license fees payable to RMail.   Conspicuously, Khan and Tomkow have never produced any shareholder meeting and board of director meeting minutes whereby their insider, self-dealing transactions were fully disclosed and approved in advance; given the Superior Court's SOD/RSOD, Khan and Tomkow's corporate record forgery and destruction (coupled with the August 30, 2013 "notice" for a meeting to approve undisclosed corporate minutes from 4 years ago – Ex. 24[B]) underscores why there is no record of actual full disclosures and informed consent. Consistently with their practice of concealment here, and although the 219/334 Patents transaction allegedly was completed in August 2009, Khan and Tomkow did not allude to the transactions until January 2011 (burying the reference to the transaction in a note section of an alleged "audit" of RIL's assets (an "audit" used to spook those shareholders contacted about yet another asset transfer transaction involving RIL's assets, this time to RComm)).

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 13th day of September, 2013 at Chatsworth, California.

Patrick C. McGarrigle

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9600 Topanga Canyon Boulevard, Suite 200, Chatsworth, California 91311

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF CREDITOR - ADVERSARY PLAINTIFF KENNETH BARTON TO CONVERT DEBTOR ZAFAR KHAN'S CHAPTER 13 BANKRUPTCY CASE TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PATRICK C. McGARRIGLE AND EXHIBITS THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___9/13/2013___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee - Nancy K Curry (TR): ecfnc@trustee3.com

Attorney for Debtor - Lewis R. Landau: LLandau@HorganRosen.com

Attorney for Thomas Burke/ 26736 Canada, Inc.: scott.e.shapiro.esq@gmail.com

United States Trustee (LA): ustpregion1 6.la.ecf@usdoj.gov

Joely Khanh Linh Bui on behalf of Interested Party Courtesy NEF: wdk@wolffirm.com, joely.bui@wolffirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___9/13/13___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | | |
|---|---|---|---|
| Franchise Tax Board<br>Bankruptcy Section MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Courtesy NEF<br>c/o The Wolf Firm<br>2955 Main Street<br>Second Floor<br>Irvine, CA 92614-2528 | Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Los Angeles City Clerk<br>P.O. Box 53200<br>Los Angeles, CA 90053-0200 |
| Los Angeles Division<br>255 East Temple Street<br>Los Angeles, CA 90012-3332 | 126736 Canada Inc., a Canadian<br>corporation<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | American Express<br>Box 0001<br>Los Angeles, CA 90096-8000 | (p) BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 |
| Barclays US Air<br>Card Services<br>PO Box 13337<br>Philadelphia, PA 19101-3337 | CMRE Financial Svcs In<br>3075 E Imperial Hwy, Ste 200<br>Brea, CA 92821-6753 | Cerastes, Llc<br>C O Weinstein And Riley, Ps<br>2001 Western Avenue, Ste 400<br>Seattle, Wa 98121-3132 | Chase United Mileage Plus<br>Card Services<br>PO Box 94014<br>Palatine, IL 60094-4014 |
| Citibank Aadvantage<br>Processing Center<br>Des Moines, IA 50363-0001 | George Martin<br>c/o Scott E. Shapiro, Esq.<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | Henry Ben-Zvi<br>Ben-Zvi & Associates<br>3231 Ocean Park Boulevard, Suite 212<br>Santa Monica, California 90405-3232 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 |
| (p)Portfolio Recovery Associates LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | Suntrust Mortgage, Inc<br>Bankruptcy Department RVW 3034<br>PO Box 27767<br>Richmond VA 23261-7767 | Suntrust Mortgage Inc.<br>PO Box 26149<br>Richmond, VA 23260-6149 | Thomas Burke<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

| United States Trustee (LA) 725 S Figueroa St., 26th Floor Los Angeles, CA 90017-5413 | Lewis R Landau Horgan Rosen Beckham & Coren LLP 23975 Park Sorrento Ste 200 Calabasas, CA 91302-4011 | Nancy K Curry (TR) 700 S Flower Street, Suite 1215 Los Angeles, CA 90017-4114 | Zafar David Khan 1929 Ruhland Ave, Unit A Redondo Beach, CA 90278-2322 |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date)        9/13/13        , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Federal Express:
Hon. Vincent Zurzolo
U.S. Bankruptcy Court, Roybal Federal Building,
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012-3332

Via Federal Express:
Hon. Julia W. Brand
U.S. Bankruptcy Court, Roybal Federal Building
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 13, 2013   Vanessa Bravo | /s/ Vanessa Bravo |
| *Date*                *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**